93   253
101   255
101   450

WILLIAM M. SMITH *vs.* CHARLES C. SMITH, and another.

Piscataquis.    Opinion November 28, 1899.

*Partnership.    Dissolution.    Exceptions.*

If parties would obtain any benefit from their exceptions, it is incumbent upon them to set forth enough in their bill of exceptions, so that the court may determine that the points raised are material; and that the instructions are both erroneous and harmful. The court will not travel out of the record to imagine the ills that litigants are heir to.

A requested instruction to the jury that "the employment of a relative by one partner at an exorbitant price, without the knowledge or consent of the other partner, does not bind the firm," was refused by the presiding justice, who instructed the jury that the employment must be in good faith. Nothing appeared in the case to show upon what ground this request for instruction was made, except the fact that by the contract the person employed was to receive seventy-five dollars per month. *Held;* that the instruction was correct.

In an action by the plaintiff to recover pay for services rendered to the defendants as copartners, the defendants claimed that the copartnership was dissolved by the giving of a "trust mortgage" by one partner Smith, without the knowledge or consent of the other, Williams, and that Smith could not thereafter employ the plaintiff on the credit of the firm.

Inasmuch as it did not appear that the "trust mortgage" was a conveyance of all the property of the firm, or that the trustees accepted the trust or acted as trustees, or that the plaintiff, who was then and for a long time had been under contract relations with the defendants as a copartnership, had notice of any dissolution of the firm by any method whatever, *it was held;* that the instructions given or refused touching the dissolution of the copartnership based upon the theory that the trust mortgage became effective and that the plaintiff might be affected thereby, became immaterial.

If the trustees did not accept the trust, the instrument was of no effect; and if the plaintiff had no notice, he was not affected in any event.

ON MOTION AND EXCEPTIONS BY DEFENDANTS.

This was an action of assumpsit upon an account annexed brought by the plaintiff to recover from the defendants as copartners an amount that he claimed to be due to him for his personal labor while in their employ. The account is as follows:

East Brownville Maine Slate Company

| | To Wm. M. Smith, | | Dr. |
|---|---|---|---|
| labor from 25 April to October 12th, 1896 | | $412.50 | |
| "    "    Oct. 12 1896, to Mch 31st 1897 | | 412.50 | |
| | | $825.00 | $825.00 |
| Less cash, $100. and $206. | | | 306.00 |
| | | | $519.00 |

Some time prior to April 25, 1896, the defendants became copartners in the operating of a slate quarry in the town of Brownville. On the 25th day of April, 1896, the plaintiff went to work for the defendants. At that time no agreement as to the amount of wages was made. The plaintiff claimed that, at some time prior to the 12th day of October, 1896, he made an agreement with his father, one of the copartners, fixing the price of his wages at $75.00 per month. The defendant Williams claimed that the plaintiff had received in full all that was due to him for wages from April 25, 1896, to October 12, 1896; and that from October 12, 1896, to March 31, 1897, the defendants were not liable. Sometime prior to October 12, 1896, the defendant Charles C. Smith went to Dover to consult an attorney in regard to the amount of debts owed by the copartners. As a result of that conference a paper was drawn up, called a trust mortgage, and given by the defendant Charles C. Smith for said copartners to J. B. Peaks and others. It did not appear that the trustees named in said paper accepted the trust or acted as trustees. At the date this trust mortgage was made and given the defendant Williams was in Canada. Upon his return to Brownville he claimed to have repudiated everything that was done by him in giving the trust mortgage and in caring for the property. The defendants' counsel claimed that the copartners were not liable for

any debt incurred after the 12th day of October, 1896. They claimed that the giving of the trust mortgage was a dissolution of the copartnership. Upon this branch of the case the court instructed the jury as follows:

"The construction of all written instruments is for the court and not the jury, because it is not a fact to be passed on by the jury— the writing shows for itself. It, therefore, becomes my duty to give a construction to be placed upon that paper. The contention of the defendants is that this was such an instrument as dissolved the partnership at that time; so that the partnership did not continue after the 12th day of October. They say further, the partnership being dissolved by reason of that paper, or whatever occurred, that Mr. Smith, senior, could not bind the firm by the employment of his son to look after the business at the quarry. It is true that one partner may by certain conveyances dissolve a partnership. If, for instance, he assigns all the property and effects of the partnership for the benefit of the creditors, it dissolves the partnership, because all the property is swallowed up. But a partner may sell property to pay debts. Any one partner may sell the personal property of the firm to pay debts, and he may pledge the property of the firm to pay debts, and by so doing the partnership is not dissolved. So I instruct you, as a matter of law, that this trust mortgage, being a mortgage simply, did not in and of itself, dissolve the partnership, but the partnership continued notwithstanding."

The defendants claimed that the copartnership was dissolved, and being dissolved, Charles C. Smith could not make any contract to bind his copartner. Upon this branch of the case the court instructed the jury as follows:

"But it is claimed that Mr. Smith, the partner, said to Mr. Williams that the partnership was dissolved. When there is a partnership at will, no time being named, one partner may dissolve the partnership, that is, give notice of the dissolution of the partnership and the partnership, except so far as may be necessary to wind up the business, is dissolved. But there must be a distinct notice of dissolution. It must be a notice to the other partner

which is certain, not left to conjecture. Now, my recollection of the testimony is that Mr. Smith, the elder, testified that he said to Mr. Williams that the partnership was dissolved by reason of this trust mortgage. And I instruct you that the trust mortgage did not of itself dissolve the partnership. The question as to whether what was said and done afterwards amounted to a dissolution of the firm, is a question of fact for you to determine, and in determining that you will remember what the testimony is as to what was said between the parties."

The defendant, John J. Williams, claimed that the copartnership was dissolved; that the copartnership being dissolved the defendant, Charles C. Smith, had no authority to hire the plaintiff and bind the defendant Williams as a copartner. Upon this branch of the case the court instructed the jury as follows:

"So I instruct you that if Mr. Smith, the plaintiff, was there in charge of the quarry under his father and with the knowledge and consent of Mr. Williams, that he is entitled to recover compensation for what he did there, and even though the partnership had been dissolved he would recover such compensation, because while after the dissolution of the partnership the authority of partners, as agents for one another, ceases in a general way, so far as the transaction of the business of the firm is concerned, yet it continues so far and so long as may be necessary for the winding up of the affairs of the partnership, and of caring for, preserving and disposing of the property; and for those purposes, the care of the property, the disposition of the property, and the winding up of the partnership affairs, the agency of one partner for all continues. So that if Mr. Smith, senior, the partner, did in fact employ his son to look after the property in the interest of the partnership, and he performed those duties, then the firm would be liable. He would bind his copartner so far. He could not bind him generally as a partner, but to the extent of the preservation of the property."

The defendants' counsel asked the court to give the following instructions to the jury, which requested instructions, the court declined to give: " That the employment of a relative by one partner at an exorbitant price, without the knowledge or consent

of the other partner, does not bind the firm." As to this request the presiding justice said to the jury: " I think I will not instruct you in the terms requested, but I do instruct you that the employment must be in good faith; and I think that covers it."

The defendants' counsel also asked the court to instruct the jury " that if they find that either or all of the trust mortgagees, in the mortgage given by C. C. Smith, entered into possession, either actual or constructive, of the mortgaged property, under said mortgage, then the partnership was dissolved."

The court declined to give the instruction, and said to the jury: " I have covered it fully. This is a question whether they entered into possession, but I think I will decline to give the instruction requested."

To these several instructions of the court to the jury and its refusal to give said requested instructions, the defendants excepted.

The jury returned a verdict in favor of the plaintiff for the full amount claimed by him.

The defendants also filed a motion for a new trial, but did not report the evidence, and did not argue the motion. The charge to the jury was reported in full with the bill of exceptions.

*J. B. Peaks and E. C. Smith,* for plaintiff.

Whether a conveyance by one partner to the others of all his interest is a dissolution of the partnership, is a question for the jury. *Taft* v. *Buffum,* 14 Pick. 322.

One partner may mortgage for the debts of the copartnership. *Tapley* v. *Butterfield,* 1 Met. 515.

If the partnership was not dissolved by this trust mortgage, then of course the instruction given can harm no one, because the judge submitted the question of fact to the jury to determine whether what was said and done afterwards amounted to a dissolution of the firm, and the jury found that it did not. *Taft* v. *Buffum,* supra.

All persons are entitled to actual notice of the dissolution of a firm, or the retirement of a partner, who have previously given credit to the firm in money, goods or services. George on Partner-

ship, p. 261; *Stimson* v. *Whitney,* 130 Mass. 591; *Roberts* v. *Spencer,* 123 Mass. 397; *Baring* v. *Crafts,* 9 Met. 380.

The instructions could not harm the defendant, because there is no pretense that he had ever given notice to anybody that he claimed the partnership was dissolved.

Notwithstanding dissolution, a partner has ample authority to bind the firm so far as may be necessary to complete transactions begun but unfinished at the time of the dissolution. *Murray* v. *Mumford,* 6 Cow. (N. Y.) 441; *Thursby* v. *Lidgerwood,* 69 N. Y. 198; *Yale* v. *Eames,* 1 Met. 486.

From the manner in which these exceptions are drawn, it does not appear by either of them what the evidence tended to show, and in what way the defendant is injured by them. This criticism applies especially to the last two.

*C. W. Hayes and H. Hudson,* for defendants.

This plaintiff was the only one in possession for some time, and as he was one of the assignees he must be considered as holding for them under the assignment.

After dissolution a partner can create no new liability, even to the renewal of an existing date or indebtedness. *Perrin* v. *Keene,* 19 Maine, 355; *Simmons* v. *Curtis,* 41 Maine, 373; *Lane* v. *Tyler,* 49 Maine, 252; *Lumberman's Bank* v. *Pratt,* 51 Maine, 563; *Bowman* v. *Blodgett,* 2 Met. 308. If the instrument is construed to be a sale or mortgage, we claim it would have the effect to dissolve the partnership. A sale of the entire property of a copartnership effects a dissolution. *Wells* v. *Ellis,* 68 Cal. 243; *Kennedy* v. *Porter,* 109 N. Y. 526; *Thompson* v. *Bowman,* 6 Wall. 316. A mortgage of all the property of a concern, putting the mortgagees into actual possession, has the same effect. *Smith* v. *Vandenburg,* 46 Ill. 34. He cannot charge the firm for his own time and services in winding up the affairs of the copartnership. *Dunlap* v. *Watson,* 124 Mass. 305.

At common law the surviving partner can not charge for services in winding up the affairs of the firm. *Schenkl* v. *Dana,* 118 Mass. 236.

It has been held that the guardian of an infant partner can not

charge the firm for services in winding up the firm's affairs, but must charge such services to the estate of the infant. *McMichael* v. *Raoul*, 14 La. Ann. 307.

It must follow that this partner, Smith, being bound to care for and preserve the property without charge, and having no power to create new liabilities against the firm, can not bind the firm for services of his son in watching this hole in the ground.

The hiring of an incompetent relative by one partner without the knowledge or consent of the other did not bind the firm. *Beste* v. *His Creditors*, 15 La. Ann. 55. On the same principle, the hiring of a relative at an exorbitant price would not bind the firm. "Indeed" says the author, in Parsons on Partnership, 223, "there seems to be no relation in life calling, either by its own exigencies, or by the rules of law, for a more absolute good faith, than the relation of partnership."

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, SAVAGE, JJ.

SAVAGE, J. This is an action brought to recover an amount which the plaintiff claims to be due to him for his personal labor while in the employment of the defendants as copartners, from April 25, 1896, to March 31, 1897. No price was agreed upon at the time he began to work, but the plaintiff claims that he subsequently, and prior to October 12, 1896, made an agreement with his father, one of the defendants, fixing his wages at $75 a month. It is not denied that the defendants were partners from April 25, 1896, to October 12, 1896, doing business under the name of East Brownville Maine Slate Company. But on this last named day, an instrument, called in the bill of exceptions "a trust mortgage," was given by the defendant Smith, as copartner, to J. B. Peaks and others. It was given without the knowledge of the defendant Williams. It purported to convey certain property of the copartnership, namely, "all the slate manufactured and now at the quarry in said Brownville, and all slate to be hereafter manufactured in said quarry, by said East Brownville Maine Slate Com-

pany, and all tools, machinery and apparatus owned by said East Brownville Maine Slate Company." The conveyance was expressed to be in trust "to pay the workmen in said quarry and other creditors of said East Brownville Maine Slate Company." The names of the creditors and the amount of their claims are all given.

The defendants claim that the giving of the "trust mortgage" was a dissolution of the copartnership; that the copartners were not liable for any debt incurred after it was given; that the defendant Smith could not by contract bind Williams after the dissolution; and hence that the plaintiff cannot recover against them as copartners for any labor performed after October 12, 1896.

It may be conceded, as claimed by the learned counsel for the defendants, that when one partner, without the knowledge or consent of the other, makes a sale or assignment of all the property of the firm, or gives a general assignment for the benefit of creditors, it works a dissolution of the firm. Yet it does not follow that this partnership was thus dissolved, or if it was, that this plaintiff was affected thereby. In the first place, the case does not show, either on the face of the instrument or in the bill of exceptions, that the "trust mortgage" was a conveyance of all the property of the firm. Again, the exceptions expressly state that it did not appear at the trial that the trustees named in the instrument accepted the trust or acted as trustees. Further, it does not appear that the plaintiff had notice of any dissolution of the firm by any method whatever.

Under these conditions, all the instructions given or refused, touching the dissolution of the copartnership, became immaterial. They were based upon the theory that the trust mortgage became effective, and that the plaintiff might be affected thereby. If the trustees did not accept the trust, the instrument had no more effect than any other piece of paper. Or if they did accept the trust, the plaintiff, who was then and for a long time had been under contract relations with the defendants, as a copartnership, would not be affected, without notice. He would still have the right to labor under his contract, and would still be entitled to recover his pay.

So far as appears by anything that the record contains, it has not been shown that the instructions were either wrong or prejudicial. If the defendants would obtain any benefit from their exceptions, it was incumbent upon them to set forth enough in their bill, that the court may determine that the points raised are material, and that the instructions were both erroneous and harmful. It has been so held too many times to require the citation of authorities. The court cannot travel out of the record to imagine the ills that litigants are heir to.

These considerations dispose of all the exceptions save one. The presiding justice was requested by the defendants to instruct the jury that "the employment of a relative by one partner at an exorbitant price, without the knowledge or consent of the other partner, does not bind the firm." The presiding justice declined to instruct in the terms requested, but did instruct the jury that the employment must be "in good faith." Nothing further appears in the case to show upon what ground the request for instruction was made, except the fact that by the contract the plaintiff was to receive $75 a month. The instruction given was, we think, all the defendants were entitled to, from anything that appears in the case.

The defendants do not rely upon their motion.

*Motion and exceptions overruled.*